[Civ. No. 36380. First Dist., Div. Four. Feb. 17, 1976.]

LAWRENCE ULMER, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE OAKLAND-PIEDMONT
JUDICIAL DISTRICT OF ALAMEDA COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

COUNSEL

*Evelle J. Younger,* Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General,

Clifford K. Thompson, Jr., and Martin S. Kaye, Deputy Attorneys General, for Real Party in Interest and Appellant.

James C. Hooley, Public Defender, and Michael B. Millman, Assistant Public Defender, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

---

**OPINION**

**CHRISTIAN, J.**—The People have appealed from a judgment of the superior court for issuance of a writ prohibiting the municipal court from entertaining criminal charges against Lawrence Ulmer for accosting another in a public place for the purpose of begging or soliciting for alms (Pen. Code, § 647, subd. (c)) and soliciting contributions for a charitable purpose without a permit (Oakland Mun. Code, § 3-2.09).

The People's return to the writ did not controvert Ulmer's contention that Municipal Code section 3-2.09 is unconstitutional; thus, the ordinance is not in question in this appeal.

It is contended that the superior court erred in determining that Penal Code section 647, subdivision (c), is unconstitutional in that it is either overbroad, i.e. prohibits constitutionally protected as well as unprotected activity, or it is vague and indefinite.

It is alleged in the petition, but not established of record, that Ulmer was arrested while engaged in soliciting funds for the Son of Man Temple for scientific research on the disease of sickle cell anemia.

Penal Code section 647, enacted in 1961, states: "Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: . . . (c) Who accosts other persons in any public place or in any place open to the public for the purpose of begging or soliciting alms." The evident purpose of this statute is to protect members of the public from the annoyance of being approached in a public place by beggars. The comments of the principal draftsman of the statute were submitted with the final draft to the Assembly Interim Committee on Criminal Procedure. These comments, reproduced in the report of the committee, state:

This section is drafted to meet the problem of controlling begging by describing specific acts. It is aimed at the conduct of the individual who goes about the streets accosting others for handouts. It is framed in this manner in order to exclude from one ambit of the law the blind or crippled person who merely sits or stands by the wayside, the Salvation Army worker who solicits funds for charity on the streets at Christmas time and others whose charitable appeals may well be left to local control. (2 Assem. J. Appendix (1961 Reg. Sess.) Assem. Interim Com. Rep. (1959-1961) Crim. Proc. pp. 12-13.)

■ The First Amendment to the Constitution of the United States and article I, section 9, of the California Constitution protect the freedom of individuals to speak, write, print, or disseminate information or opinion. Regulation of conduct bearing no necessary relationship to the freedom to speak, write, print or distribute information or opinion does not abridge the guarantees of the First Amendment. (*Breard* v. *Alexandria* (1951) 341 U.S. 622, 641 [95 L.Ed. 1233, 1247, 71 S.Ct. 920, 35 A.L.R.2d 335]; *Schneider* v. *State* (1939) 308 U.S. 147, 160-161 [84 L.Ed. 155, 164, 60 S.Ct. 146].) Begging and soliciting for alms do not necessarily involve the communication of information or opinion; therefore, approaching individuals for that purpose is not protected by the First Amendment. The statute is not invalid on First Amendment grounds.

■ The superior court reached the issue of vagueness by determining that the word "accost" has 2 possible meanings: (1) "to approach, to speak to, to address," the meaning essentially contained in 10 of the 12 dictionaries cited in the court's appendix to its decision, and the meaning contained in all 6 of those dictionaries that were in print at the time the statute was enacted; (2) "to approach, to speak to, to address," in an impetuous, rude, brusque or abrupt manner, the meaning essentially contained in 2 of the 12 dictionaries cited in the appendix. The court stated that if "accost" were to have the first meaning, the statute would be invalid on First Amendment grounds, and that if "accost" were to have two possible meanings, the statute would be vague and indefinite as to what conduct it prohibits and therefore unconstitutional (citing *Baggett* v. *Bullitt* (1964) 377 U.S. 360, 367 [12 L.Ed.2d 377, 382, 84 S.Ct. 1316]; *Landry* v. *Daley* (N.D.Ill. 1968) 280 F.Supp. 938, 951).

The statute does not impinge on First Amendment freedoms regardless of which definition of "accost" is used. Moreover, the meaning connoted by the word "accost" is clear from the legislative materials

noted above: the statute is "aimed at the conduct of the individual who *goes about on the streets* accosting others for handouts" (italics added); the statute does not extend to one "who merely sits or stands by the wayside." Walking up to and approaching another for the purpose of soliciting, as opposed to merely receiving donations, is prohibited by the statute. The manner of approach is thus pertinent. None of the definitions cited by the court, that come from dictionaries in print at the time the statute was enacted, refer to the manner of approach. The statute forbids any approach in a public place for the purpose of soliciting or begging for alms. The meaning of the statute is thus sufficiently clear to give warning of the conduct that is proscribed.

The question whether Ulmer was in fact soliciting for alms in a public place or was conducting a "charitable appeal" which the statute has left to "local control," cannot be reached in this proceeding; that is a fact issue to be resolved at trial.

The judgment granting the writ is reversed.

Caldecott, P. J., and Emerson, J.,* concurred.

A petition for a rehearing was denied March 16, 1976, and the opinion was modified to read as printed above.

*Retired judge of the superior court sitting under appointment by the Chairman of the Judicial Council.